Chief Justice Robertson
delivered the Opinion of the Court..
In 1797, Joseph Crocket, then owning a military survey for one thousand acres of land, assigned all Iris inteutst therein to Tucker M. Woodson, to whom a patent was afterwards (1799) issued, for the entire tract, and who, after the emanation of the patent, and in the same year, sold and conveyed to G-holson Stapp, seven hundred and fifty acres, without designation of boundary otherwise than by the stipulation, that the quantity thus sold should lie within the patent bounds.
In 1816, the heirs of Gholson Stapp conveyed to Joshua Cates, all their interest (derived by descent from their ancestor,) in the undivided quantity of seven hundred and fifty acres, which had been conveyed by Woodson.
In 1814, Tucker M. Woodson was, by a regular in-' quisition, found to be then a lunatic, and Samuel H. Woodson was appointed his committee; and, in 1817, the court, having ascertained by another inquest, that Tucker M. Woodson was still a lunatic, and that Samuel H. Woodson was unwilling to continue to be his committee,.-.appointed (in June,) Joseph Crocket the committee of his person and estate.
In April, 1817, Cates filed a hill in chancery against Joseph Crocket, Tucker M. Woodson and Moses Shelby, alleging, that Crocket liad employed Shelby to survey his military claim of one thousand acres, and had agreed to allow him one fourth part of the land ; that Shelby, having made the survey and thereby -become entitled to tiie one fourth, sold his interest to Crocket, in December, 1814, and that Crocket had sold it to Cates, on the first of January, 1817; and, therefore, *453 praying for a conveyance of the legal title from Wood-son, to the one fourth — that being supposed to be the residue of the tract after deducting seven hundred and ffly acres, which had been conveyed to Stapp.
There was no service of process on either Crocket, Woodson or Shelby, and the latter did not enter are appearance. But, at the October term, 1817, Joseph Crocket filed his answer,- and Robert Tlrocket, who had been appointed, at the April term, guardian, to answer for Woodson, also filed an answer. And thereupon, at the same time} the court decreed that Cates was entitled to a conveyance of the legal litle “to one fourth part of said survey of one thousand acres —being the balance, after deducting the seven hundred and fifty acres conveyed by Woodson to Gholsoii Stapp and a commissioner, appointed for that, purpose, made a deed according. to the decree, which deed the court approved.
In March, 1821, Tucker M. Woodson, then being, deemed to be of sound mind, was, by order of court, discharged from the control of his committee, and restored to the rights and privileges of a sane man, sui juris.
In 1819, William Hunter filed a bill in chancery against T. H. Letcher and others, alleging, that Letcher had bought from Woodson, and sold to him (Hunter,) Woodson’s interest in the one thousand acres; that Cates asserted a claim to the whole tract ; and therefore praying for a decree for a good title, or for a rescission of the-contract with Letcher. Gates, and Woodson,, who liad, been made defendants, both, answered the bill. The-former asserted a claim to the entire tract; and the latter made his answer a cross bill against Letcher, and prayed for a rescission of their contract. Letcher was never made a party to the original bill, or to the cross bill, and did not answer either of them. But, in 1.821,, the court decreed a rescission of the contract between Hunter and Letcher, and a cancelment of any deed, or other written evidence of the agreement between Wood-son and Letcher : and dismissed the bill as to Cates.
In 1823, Tucker M. Woodson conveyed to his son-Joseph M. Woodson, all his right to the one thousand *454 acres. And, in 1829, Joseph M. Woodson filed a bill m chancery against Cates and others holding under.him, alleging, among other things, that tliefe is a surplus of about six hundred and fifty acres in the tract; and praving for a partition, assigning to Cales and his vendees, seven hundred and fifty acres, and to himself (Joseph M. Woodson,) the residue. The right to any rebel was resisted by t!ie; answers. But the circuit court rendered a decree for partition, according to the prayer in the bill ; and this appeal is brought to reverse that decree.
A lunatic maltes a deed, and afterwards, when s.me, conveys tile same land lo another grantee —tho’ the first deed is not absolutely void, the subsequent grantee,because of the privity of contract between him and thelunatic, may avoid it.
A decree cancelling a sale made by 'a lunatic, in a suit in w -ich hi r vendee was not joes^not^nd the latter,
*454 The appellants rely on several grounds, in opposition to the decree. First: the record in the case ol Hunter against Letcher and others. Second: the decree in the case of Cates against Crocket and others. Third: they insist, that a part of the land lies between Walker’s line and the chartered boundary line between this state and Tennessee, and that the circuit court had no jurisdiction over so much of the tract as lies south of Walker’s line, which is the conventional boundary betweén the two-states. Fourth: they say, that there is a defect of proper parties. And, in consequence of all these objections, they insist, that the appellee was not entitled to any decree; but that, if he was, the decree rendered, is for more than he was entitled to in equity.
The points thus presented, will be briefly considered,, in the order in which they have been stated.
I. Tiiere is nothing in the record in the case of Hunter against Letcher and others, which can materially affect the right asserted by the appellee. There was no-decree or litigation in that case, as between Tucker ftj. Woodson and Cates. But the counsel for the appellants-has argued, that the record shews that Tucker M. Wood-sou hadj whilst a lunatic, conveyed all his interest in the one thousand acre tract, to Letcher; and that, therefore, as the deed of a lunatic is not void, but voidable merely, the title must be deemed to have -been in Letcher, and not in Tucker M. Woodson, when the latter made the deed to the appellee ; and that, consequently, the appellee lias established no right to any decree against the appellants.
To this argument, a two-fold answer may be given:— *455 first, the record does not shew that Tucker M. Woodson had ever made a deed to Letcher. Second, the deed, had.one been made, might be avoided by the appellee, in consequence of the privity of contract between the lunatic and himself; and, in this aspect of the case, the' only effect of the record in Hunter vs. Letcher and others, would be to shew, that Letcher might have been a proper party to "this suit; because, not having been (hade a party in the case of Hunter and others, the decree in that case did not affect any interest which he may have held.
Adecreeagainst several dftendMts, will not affect the rights ofP”®'?’10 wi*s court, and is er-™in.B°“gt !l^nJ¡° reversed, it is those^defendal|t? who were the^ourt.^018
J^°“t “ in custody of a’ vice of pro cess j opou the com-0ient; it is not Pr°Per ,t0 subpreña the lunatic himself. If is a codef’t, and before the' court in his own right, he has sufficient notice-to defend forthe lunatic Where the committee is personally interested in the suit, the appointment of a guiirdian ad litem for tfip In-untie, is proper. [The decree was for land, the legal title to which was in the lunatic.-»-. Judge Underwood thinks the decree as to him, was vóid-^post.']'
II; As Shelby was not, by regular service or by appearanee, made a party in the suit of Cates against Croc- , Net and others, the decree rendered in that case, had no effect on any pre-existent equitable right to which he may have been entitled. But nevertheless, though it might be reversable on that ground, still it may be effectual as to Tucker M. Woodson and Crocket, until reversed; and may, therefore, be sufficient to vest in Cates the legal title of Woodson. And, unless it should he deemed, to be void, it has that effect. ' But, we cannot decide that it is void. ■
As to the proper mode of litigating in respect to the property of a lunatic in the custody of a committee, there-is some diversity in the books, and there has been, also, some oscillation in the practice of courts. Mitford. says, that both the committee and the lunatic should be served with notice. Milford's Pleadings, 29, 94. But, in the case of the Executors of Brashears vs. Vancourtlandt, 2 Johnson's Chancery Reports, 242, Chancellor Kent decided, that actual service on the lunatic was, not only an unnecessary, but an' idle act; and said that, “it would be quite absurd to bring in a party who has no capacity or power of action, except by the very persons already before the court, as his trustees.” We are disposed to adopt, as the more reasonable practice, that recognised by the chancellor of New York.
Now, whether service on the lunatic was proper or not, we are of the opinion, that, as Joseph Crocket, the *456 committee, was before the court, in his own right, and thus had, in fact, notice of the claim asserted against the lunatic, as well as of that asserted against himself individually ; and, as the chancellor, in consequence of the personal interest of the committee, very properly appointed a guardian ad litem, or committee for the occasion, who answered the bill, and represented the lunatic!, we will not presume that, that answer was altogether without authority, nor that the lunatic was totally unrepresented in the suit. And, though the decree as to him, may have been improvident, or even erroneous, we cannot decide that it is void.
The owner ofa tract of land, patented aslOOO acres, sells 750 ■undivided ; the vendee acquires* the interest of a de?Zfcihn', obtains a decree and conveyance Tor ‘f a fourth of the \mi-beanee after deducting the 150 acres it turns out, that there are 1650 acres in the tract : the vendee is entitled to his 750 acres, by his purchase, and by his decree, to one fourth of the whole tract only,(thewords 6i being the bal8fc. obanee viously inserted through misconception of the true quantity, being inoperative;) the residuo of the tract (surplus) remaius to the patentee, of his assigns.
It is not, therefore, material whether Crocket’s assignment of his “ interest'” transferred to 'Fucker M. Woodson the entire survey, or only three fourths thereof, nor is it material, as this case now stands, whether, even if Woodson supposed that he had obtained from Crocket the equitable right to the whole survey, he had notice of the alleged equity of Shelby.
But, the decree in the case of Cates against Crocket &o. did not transfer the title to the whole residue of the tract, after deducting the seven hundred and fifty acres which had been conveyed to .Stapp, if, as alleged and not controverted, the patent boundary contain more than one thousand acres.
Only one fourth of the tract was claimed for Shelby. J The tract was described and understood to be one of one ¡j10,,san(] acres only; and hence, the decree and the conveyance, pursuant thereto, for uone fourth part, being the balance” after deducting the seven hundred and fifty acres previously conveyed to Stapp, should be understood to mean two hundred and fifty acres, or one fourth of the .supposed quantity of one thousand acres.Wherefore, if, as alleged, the patent boundary contain one thousand six hundred and fifty, instead of one thousand acres, Cates is not entitled, under that decree, to nine hundred acres, which would be the residue after deducting Stapp’s seven hundred and fifty acres; but' *457 3s entitled to only one fourth of the entire tract of one thousand six' hundred and fifty acres, that is to four hundred and twelve and a half acres; and consequently, the decree notwithstanding, the appellee Woodson seems to be entitled to all the residue of the entire tract, after deducting Slapp’s seven hundred and fifty acres, and also four hundred and twelve and a half acres, or one fourth of the. actual quantity included within, the patent boundary.
The allegation, that part of the land lies within the conventional limits Of Ten. not being admitted, or proved, the question of jurisdiction ire which might arise, under the peculiar circum stances of the case, are merely - suggested — - not decided. A court in Ken. could not partition the land in Ten. but would probably allot to the comp’t his share out of the land within this state,unless the parties Could agree upon a division.
Ill The patent was issued by this Commonwealth, and the land is described as lying in the (now) county of Christian in this state. Bv the convention of 1820, between the states of Kentucky and Tennessee, “ Walker’s line,” east of the Tennessee river, was established as the boundary, so far, between the two states. It is now suggested, that a small portion of the land embraced by the patent, lies between “ Walker’s line,” and the chartered latitudinal line of 36 deg. 3Ó m. and, of course, within the conventional jurisdiction of the state of Tennessee; and, to that extent, the counsel for the appellants have argued, that the circuit court in Kentucky had no jurisdiction in this case..
The fact assumed as the basis of the argument, has not. been established. An amended answer, in the nature of a cross bill, suggests indefinitely, that a small portion oí the tract is south of Walker’s line. The answev to that vague allegation, does not admit its truth, but rather imports, that the respondent did not know certainly whether or not anv part of the land is within the jurisdictional limits of Tennessee; and there is no proof, by survey or otherwise, shewing that Walker’s line touches the land.
Had the fact, thus alleged and urged in argument, been established, an interesting question of jurisdiction involving the comity of co-states, and perhaps the true construction of the compact of 1820, establishing Walker’s line as the boundary between them, would have been presented in a novel and perhaps unexampled form. But, even if the alleged fact had been satisfactorily established, and even also, were we to concede that, although the title is derived from Kentucky — -the *458 larger portion of jthe tract is in Kentucky, the parties are in this state, and the proper court of thjs state first got possession of the case, for the purpose of making partition of an entirety — yet that court had no jurisdiction to enforce a partition of so much of the tract as lies south of Walker’s line, still we should have been inclined to the opinion, that, as the complainant in the circuit court might have the whole of his interest allotted to him in this state, the chancellor might, on his electing to take the whole o,f it here, have decreed accordingly, and have left the residue of-the tract for Cates and his vendees, unless they had consented to a voluntary partition, by the parties themselves, of the entire tract. But the established facts of the case do not require or .allow an express decision on any of the questions which the alleged fact might have presented for consideration.
la a suit to establish the complainant’s right, and have partition of!and,one to whom the comp’t’s vendor had, while a lunatic, sold the same land, is not a necessary party: see page 453 ; nor is a locator, whose interest a def’t held under a decree and commissioner’sdeed —see p. 452.
The purchases-of part of a tract of land, without designation of his boundary, cannot take choice of the part he will have, upon partition. Improve ments should be regarded in making the alio tments.j
IV. It 'is the opinion of a majority of the court, that it was not necessary for Woodson to have made either Shelby or Letcher a party to his suit.
The qonsequence of the foregoing view df the case, is, that the decree of the circuit court- must be reversed.
On the return of the case to the circuit court, a decree should be rendered, for partition of the entire tract, according to the foregoing opinion.
In that partition, Cates will not have, as-his counsel seemed to suppose he would, any right, as a matter of course, to have the seven hundred and fifty'acres,' which he purchased from Stapp, laid off to him in the northern portion of the tract. The sale' to Stapp was of seven hundred.and fifty acres of the whole tract, without any other designation of locality.
But the circuit court, in its partition, should, as far as may be consistent with equal justice, regard and protect settlements and improvements made on the land in good faith.
Decree reversed, and cause remanded for a decree conformable with this opinion.
Judge Underwood is of the opinion, that the decree in the case of Cates against Woodson and others is void; and, therefore, he dissents from so much of the foregoing opinion, as decides that that decree is not void.